# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case No. 2:09CR00021 |
| v. | ) |
| | ) **OPINION AND ORDER** |
| | ) |
| **NANCY BELL, ET AL.,** | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Defendants. | ) |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant Nancy Bell; Michael A. Bragg, Bragg Law, PLC, Abingdon, Virginia, for Defendant Iris Gibson.*

In this criminal case, defendant Nancy Bell has filed two motions, one requesting for the suppression of evidence seized pursuant to a search warrant ("*Franks* Motion") and one seeking the suppression of evidence seized during a warrantless search of Bell's person ("Warrantless Search Motion"). Defendant Iris Gibson joined in both of these motions. For the reasons detailed below, I deny both of these motions.

I

Defendants Nancy Bell and Iris Gibson—mother and daughter, respectively—have been indicted for conspiring to possess with the intent to

distribute and distribute oxycodone, for knowingly distributing oxycodone on several occasions, and for knowingly using a place for the purpose of distributing a controlled substance.

The mother-daughter pair had been under investigation by the Lee County, Virginia, Sheriff's Office (the "Sheriff's Office") since approximately October 2008. Nearly ten months into the investigation, on July 30, 2009, Lieutenant Fred Rouse of the Sheriff's Office submitted an affidavit to a Lee County magistrate in order to obtain a search warrant for Gibson's residence, a mobile home in Jonesville, Virginia. In the affidavit, Lt. Rouse swore to the following:

> The material facts constituting probable cause that the search should be made are:
>
> The Lee County Sheriffs Office has been involved in a narcotics investigation involving Iris Gibson and Ben Snodgrass of Jonesville VA and their supplier Nancy Bell from the state of Tennessee for approx. one year. During the past year two individuals that have been charged with the distribution oxycontin have given detailed statements that they were selling oxycontin for Nancy Bell and that Bell come[s] and stays with her daughter Iris Gibson at [Gibson's mobile home in Jonesville, Virginia] between the 30th and 3rd of each month and around the 15th of each month to sell her oxycontin. On 6-1-09, 7-1-09 and 7-17-09 the Lee County Sheriffs Office using a confidential and reliable informer has purchased a total of ten 40 mg oxycontin tablets from Iris Gibson purchases took place at [her mobile home] and on each purchase Nancy Bell was present. This same informer has been in contact with Gibson by phone. Gibson told informer that Bell would be[ ] visiting the evening of the 30th and would have oxycontin to sell.

(Def. Bell's Mot. *Franks* Hr'g & Suppression, Ex. 1 at 1-2.) Additionally, the affidavit stated, "This informer's credibility or the reliability of the information may be determined from the following facts: The confidential and reliable informer has made the controlled purchase described and has given a detailed statement of their involvement with Gibson and Bell and has also corroborated statements given by other coconspirators." (*Id.* at 2.) The informer referred to here was later revealed to be Laura Hadges.

Lt. Rouse and other law enforcement officers executed the search warrant at the defendant's home on the same day the warrant was issued. Gibson's home was located on Jason Gibson Drive. The only entrance to that road was from Horton Road. Initially officers parked two vehicles on Horton Road—one vehicle was north of Jason Gibson Drive, the other south. The officers on the south end of Horton were passed by Bell and Gibson (collectively, the "defendants") who were in an SUV driving north on Horton Road and then turning west onto Jason Gibson Drove. The officers followed the defendants onto Jason Gibson Drive and stopped their SUV in the middle of the road, about thirty yards from the entrance to Gibson's mobile home.

After Bell and Gibson parked, an officer approached their vehicle and told the two women to put their hands in front of them and to wait for instructions from Lt. Rouse, who had not yet reached their vehicle. Lt. Rouse approached the driver's side

where Bell was sitting. He ordered Bell out of the vehicle, informed her of the search warrant, and read Bell her *Miranda* rights. Lt. Rouse then asked Bell whether he would find any narcotics in the SUV. Bell admitted that she had medication in her purse. Lt. Rouse took the purse and examined it. Inside, he found a large pill case that separated medication for each day of the week, a blue prescription bottle containing fifteen 40 milligram oxycodone pills, a white pill bottle containing thirteen 10/650 milligram Endocet® tablets,[1] and a small plastic bag containing five 10/650 milligram Endocet® tablets and two 40 milligram oxycodone pills.

Bell and Gibson were then escorted to Gibson's mobile home where they were detained while the SUV and home were searched. While sitting at the kitchen table, Lt. Rouse advised Gibson of her *Miranda* rights.[2] Then Bell and Gibson were searched. While frisking Bell, officers discovered and seized $1,766 in cash from her pocket. Afterwards, the two women were questioned separately by Lt. Rouse and

---

[1] Endocet® tablets contain the active ingredients oxycodone and acetaminophen in the ratio specified, e.g., 10/650 milligram tablets contain 10 milligram of oxycodone and 650 milligram of acetaminophen. *See* Endo Generic Products Fact Sheet, Endocet® Tablets, http://www.endo.com/pdf/products/Endocet_7.5-500_10-650.pdf (Jan. 2005). Endocet® is a registered trademark of Endo Pharmaceuticals Inc. *Id.*

[2] Gibson contended in her Motion to Suppress Evidence & for Severeance that she was never advised of her *Miranda* rights during the search and cited the failure as a grounds for suppressing the statements she made to officers at that time. However, Gibson presented no evidence to support this claim, and there was uncontradicted testimony by Lt. Rouse that he read Gibson her *Miranda* rights. Therefore, I will not suppress Gibson's July 30, 2009 statements on this ground.

Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent Stephen Levesque.

Although both initially denied selling oxycodone, Gibson eventually stated that her daughter, Misty Parker, sold and used Bell's oxycodone pills, and after learning of Parker's involvement, Gibson herself started selling her mother's oxycodone pills. Gibson made several other incriminating statements, including that she sold 40 milligram oxycodone tablets for $50 each and that $80 of the money in Bell's pocket was from her sales of oxycodone. Gibson then named several of her customers. At the conclusion of the search of the mobile home, both defendants were placed under arrest.

Bell and Gibson have now moved to suppress the evidence seized on July 30, 2009 on the grounds that the search warrant was improperly obtained and that the warrantless search of the SUV and Bell's person was unreasonable. They have also moved to suppress the incriminating statements as fruit of the poisonous tree. Their motions have been briefed and argued, and an evidentiary hearing was conducted. They are now ripe for decision.

III

Bell and Gibson move first, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and its progeny, to suppress any evidence discovered as a result of the search authorized by the warrant.[3] Under *Franks*, a defendant may attack a facially sufficient affidavit supporting a search warrant if (1) it contains statements or omissions that were deliberately false or demonstrated a reckless disregard for the truth and (2) those challenged statements or omissions are essential to the magistrate judge's finding of probable cause. *Id.* at 155-56; *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). However, this is not an easy task. There is a strong "presumption of validity with respect to the affidavit." *Franks*, 438 U.S. at 171. Additionally, if a defendant claims that the affidavit is unreliable because of an omission rather than a false statement, as Bell and Gibson do here, the burden on the defendant is even higher because the affidavit "cannot be expected to include every piece of information gathered in the course of an investigation." *United States v.*

---

[3] There is scant evidence in the record as to what was actually obtained during the search of Gibson's home pursuant to the warrant. Counsel for Bell speculated during the hearing that plastic bags were recovered from the home. The only item listed as recovered in the Sheriff's Office Investigative Report that was not described as found in Bell's purse or pocket in the Department of Justice's Report of Investigation is "[o]ne plastic baggie green plant matter, little plastic baggies and rolling papers." (Def. Bell's Mot. *Franks* Hr'g & Suppression, Exs. 2-3.) Since there is an indication that something was recovered, I must rule on the *Franks* challenge, but because I deny the motion to suppress, it is not necessary for me to determine exactly what that was.

*Tate*, 524 F.3d 449, 454-55 (4th Cir. 2008) (internal quotation marks and alteration omitted). "In order even to obtain an evidentiary hearing on the affidavit's integrity, a defendant must first make a substantial preliminary showing that" the affiant omitted "material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *Colkley*, 899 F.2d at 300 (internal quotation marks omitted). If a hearing is held, the defendant must prove by a preponderance of the evidence that the affiant intentionally or recklessly omitted material facts in order for the court to void the warrant and exclude the evidence it produced. *See id.* The evidence cannot be saved by the good-faith exception to the exclusionary rule. *Id.*

In this case, the defendants contend that Lt. Rouse knowingly or recklessly omitted material information about the criminal record of the "reliable informer," Laura Hadges, mentioned in the affidavit as the person who purchased oxycodone from Bell and Gibson on three occasions and spoke to Gibson on the phone. Hadges, an admitted oxycodone addict and seller, has over twenty state felony charges pending against her for both drug and fraud offenses. During her grand jury testimony, Hadges admitted she was working with law enforcement officers in the hope that she would receive leniency from the state. Also, Misty Parker, who is the daughter of Gibson and granddaughter of Bell, had been subpoenaed as a witness

against Hadges in the spring of 2009. None of this background information about Hadges was explicitly stated in the affidavit submitted to the magistrate. And the defendants believe that these facts were material information omitted to mislead the magistrate. I disagree.[4]

To establish the requisite culpability under the first prong of the *Franks* test, defendants must provide a detailed offer of proof demonstrating the affiant had the necessary intent. *Tate*, 524 F.3d at 454. However, Bell and Gibson failed to present any evidence showing that Lt. Rouse, the affiant, had acted purposefully or recklessly. Lt. Rouse was asked only one question during the evidentiary hearing about why he omitted information about Hadges. Defense counsel asked if there was some particular reason Lt. Rouse felt Hadges's criminal background was not relevant for the search warrant affidavit, and he responded, "No." This is not enough to prove Lt. Rouse had the necessary state of mind. *See Colkley*, 899 F. 2d at 301 (holding that the culpability element of *Franks* is not satisfied when the most the record reveals is that the officer omitted facts from the affidavit because he did not believe them to be relevant to probable cause). "[E]very decision not to include certain information in

---

[4] Although I was skeptical that the defendants had overcome their burden of proof essential for a *Franks* hearing, out of an abundance of caution, I granted them an evidentiary hearing. Even after their opportunity to present additional evidence, however, Bell and Gibson have failed to demonstrate that the affidavit was defective because of the omissions.

the affidavit is 'intentional' insofar as it is made knowingly[, but] . . . *Franks* clearly requires defendants to allege more than 'intentional' omission in this weak sense." *Id.* at 300-01. *Franks* was designed to protect against flagrant police action, not negligence. *See id.* at 301. Accordingly, I find that the defendants failed to establish that Lt. Rouse had the state of mind necessary to challenge a facially valid affidavit, and I do not suppress any evidence discovered during the search conducted pursuant to it.[5]

IV

The defendants also assert that the stop of Bell's SUV and subsequent search of Bell's purse and pocket exceeded the bounds of the search warrant, making those searches unconstitutional and requiring that any evidence recovered during those searches be suppressed. The government does not dispute that the searches of Bell's purse and pocket were warrantless but instead argues that those searches did not violate the Fourth Amendment because the officers had probable cause to conduct a warrantless arrest of Bell, which justified the searches as incident to her arrest. I agree with the government's position.

---

[5] Because the defendants do not pass the first part of the *Franks* test, I do not reach the second part—whether the omission was material.

Although generally a warrantless search is per se unreasonable under the Fourth Amendment, a well-recognized exception "to the warrant requirement is a search incident to a lawful arrest." *United States v. Murphy*, 552 F.3d 405, 410 (4th Cir. 2009). Such a search need not precede the arrest, as long as the officers have probable cause to arrest the suspect before the search is conducted. *United States v. Han*, 74 F.3d 537, 541 (4th Cir. 1996). To determine whether probable cause for an arrest existed, courts must view the historical facts incident to arrest from the perspective of a reasonable police officer. *United States v. McCrae*, No. 1:06CR00025, 2006 WL 1700404, at *3 (W.D. Va. June 16, 2006). "Probable cause pursuant to a warrantless arrest exists where police have . . . knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a reasonable belief that an offense [ ] has been committed by the person to be arrested." *Id.*

During the evidentiary hearing, Lt. Rouse testified that he arrested the defendants because of the offense he believed was committed on July 17, 2009—the illegal distribution of oxycodone to Hadges, a transaction that was tape recorded and observed by at least two officers. The transaction obviously implicated Gibson because it occurred at her small mobile home, but Lt. Rouse also had information that Bell was the supplier. Hadges testified to the grand jury that Bell and Gibson were

present when Hadges purchased oxycodone from Gibson's home on July 17. Several people Lt. Rouse questioned during his investigation also told him that the oxycodone sold was obtained by Bell through a prescription in her name. Two persons who confessed to selling oxycodone for Bell told Lt. Rouse that Bell would stay with Gibson from the 30th to the 3rd between every month and on the 15th of every month to sell her oxycodone. This pattern was verified through the oxycodone purchases made on June 1, July 1, and July 17, 2009. According to his affidavit, Lt. Rouse also had been informed by Hadges that Bell would be arriving on July 30, 2009 with more oxycodone. This tip was consistent with the pattern to the drug distribution established throughout the Sheriff's Office investigation. Bell's arrival at Gibson's on the evening of July 30, 2009, served to verify Hadges's tip. Based on all this information, officers had more than enough evidence to give them probable cause to arrest Bell and Gibson for illegally distributing narcotics before their vehicle was stopped on July 30, 2009. Therefore, the stop of Bell's SUV and the arrest of Bell were lawful.

In between the lawful stop and arrest is when officers conducted three searches that the defendants challenge—the search of Bell's purse, SUV, and pockets. As incident to arrest, the officers were permitted to search Bell's person and any area within her immediate control. *See Han*, 74 F.3d at 541-42. If the occupants of a

vehicle are arrested pursuant to a drug offense, then "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009). Thereby "authoriz[ing] police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space." *Id.* at 1720. Because Bell was in her SUV before she was detained and she was arrested on a narcotics charge, officers were permitted to search her vehicle and purse as well as her person.

Moreover, the fact that the search of Bell's vehicle, purse, and pockets were undertaken before her arrest is irrelevant because probable cause to arrest Bell existed prior to the three searches. *See Han*, 74 F.3d at 541. Therefore, under the search-incident-to-arrest doctrine, the search of Bell's SUV, purse, and pockets were lawful, and the products of those searches will not be suppressed.[6]

IV

For the foregoing reasons, I deny the defendants' motions to suppress evidence collected from Gibson's home and Bell's SUV, purse, and pocket during searches

---

[6] Since I do not grant any of the motions to suppress, I do not reach the issue of whether any of the defendants' statements need to be suppressed as fruits-of-the-poisonous-tree.

conducted on July 30, 2009.  It is **ORDERED** that the motions to suppress evidence filed by Defendants Nancy Bell and Iris Gibson (DE 84, 86, 88) are DENIED.

ENTER: March 11, 2010

/s/ JAMES P. JONES
Chief United States District Judge